**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TV TOKYO CORPORATION,<br><br>          Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS,<br>LIMITED LIABILITY COMPANIES,<br>PARTNERSHIPS, AND UNINCORPORATED<br>ASSOCIATIONS IDENTIFIED ON<br>SCHEDULE A TO THE COMPLAINT,<br><br>          Defendants. | Civil Action No. 26-cv-3255 |

## COMPLAINT

TV Tokyo Corporation ("Plaintiff" or "TV TOKYO"), by and through its undersigned

counsel, hereby files this Complaint against the individuals, corporations, limited liability

companies, partnerships, and unincorporated associations identified on Schedule A hereto

(collectively, "Defendants") and alleges as follows:

## I.      Jurisdiction And Venue

1.      This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101, *et seq*., 28 U.S.C. § 1338(a)-(b),

and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this

Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of

Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United

States, including New York, through at least the fully interactive commercial internet stores

1

operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.      Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(1)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and derive substantial revenue from business transactions in New York and in this Judicial District or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      In addition, Defendants' illegal infringement actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this judicial District.

5.      For example, Defendant Internet Stores accept orders of Infringing Products from and offer to ship to New York addresses located in this Judicial District.

6.      Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal, Shop Pay, and Temu, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products,

and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    Parties

7.    Plaintiff TV Tokyo Corporation is a leading Japanese content producer and broadcaster of movies and videos with a particular strength in animation, with a principal place of business at headquartered at Roppongi Grand Tower, 3-2-1 Roppongi, Minato-ku, Tokyo 106-8007, Japan.

8.    FRUITS BASKET is a manga series created by Natsuki Takaya and published in Japan by Hakusensha, Inc. from 1998 to 2006. The story follows Tohru Honda and the cursed Sohma family, who transform into animals of the Chinese zodiac. The manga has sold over 30 million copies worldwide and was adapted into animated series in 2001 and 2019–2021, along with feature-length films. The series has been translated into multiple languages, including English, and enjoys strong international recognition in both manga and animated formats. Its themes of family, friendship, and personal growth have made it one of TV TOKYO's most cherished and enduring properties. TV TOKYO is the official source of FRUITS BASKET Products:



https://www.tv-tokyo.co.jp/anime/fruba/?cx_search=program&

9.      This action has been filed to combat online copyright infringers who trade upon Plaintiff's reputation and goodwill and valuable intellectual property by selling and/or offering for sale products, hereinafter referred to as the "FRUITS BASKET Products" in connection with the federally registered copyrights.

10.     TV Tokyo is the current owner of U.S. Copyright Registration Nos. PA-2-532-846 (the "FRUITS BASKET Work").

| REGISTRATION NUMBER | IMAGE DEPOSIT |
|---|---|
| Fruits Basket 1st Season: I'm Going<br><br>**Reg number**<br>(PA 2-532-846)<br><br>**First Published**<br>(April 6, 2019) | |



11.     True and correct copy of the registration certificate for the FRUITS BASKET Work are attached as Exhibit 1.

12.     The FRUITS BASKET Work has been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the FRUITS BASKET Work in the industry and to consumers.  Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the FRUITS BASKET website and social media sites, and point of sale materials.

13.     The FRUITS BASKET Work copyright registration is valid, subsisting, and in full force and effect.

14.     Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the FRUITS BASKET Work. As a result, products associated with the FRUITS BASKET Work are recognized and exclusively associated by consumers and the public as being of high quality.

15.     Plaintiff has made efforts to protect its interests in and to the FRUITS BASKET Work. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the FRUITS BASKET Work without the express written permission of Plaintiff.

16.     Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the FRUITS BASKET Products to consumers within the United States, including New York and in this judicial district.

## III.    Factual Background

17.     Prior to the rise of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken since availing itself of takedown procedures to remove infringing products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants which are selling illegal infringing products at prices below the cost of an original FRUITS BASKET Product:

**INFRINGING LISTINGS**

[REMOVED FROM PUBLIC DOCKET]

18.     The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products. To be able to offer the infringing products at a price substantially below the cost of the original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain.

19.     In an effort to illegally profit from the creative content of the FRUITS BASKET Work, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authorized FRUITS BASKET Products.

20.     Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

21.     The systematic and coordinated mass infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

22.     To be able to offer the infringing products at a price substantially below the cost of an original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act

in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

23.     The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

24.     In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

25.     Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.
[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine FRUITS BASKET Products, while knowingly selling unauthorized, inferior infringing imitations of Plaintiff's FRUITS BASKET Products that illegally utilize the FRUITS BASKET Work ("Infringing Products").

26.    Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 2.

27.    The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their infringement operations.

28.    The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

29.    The Seller Aliases intentionally conceal their identities and the full scope of their infringement operations in an effort to deter Plaintiff from learning Defendants' true

identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

30. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

31. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to circumvent intellectual property enforcement efforts and evade detection. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

32. A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo

environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[3].

33.    Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

34.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

35.    Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately infringed Plaintiff's FRUITS BASKET Work in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this judicial district of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

### Count I - Copyright Infringement
**(17 U.S.C. § 501(a))**

36.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

37.    Plaintiff's copyrights have significant value and have been produced and created at considerable expense.

38.    Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted FRUITS BASKET Work, including derivative works. The FRUITS BASKET Work is the subject of valid copyright registrations. *See* Exhibit 1.

39.    Upon information and belief, Defendants had direct access to and knowledge of the copyrighted works through their widespread commercial availability in the marketplace, Plaintiff's extensive marketing and promotion, and through Plaintiff's normal business activities. After accessing the FRUITS BASKET Work, Defendants willfully and knowingly created unauthorized copies of the copyrighted works without Plaintiff's consent and engaged in systematic and widespread acts of infringement.

40.    Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works and by producing and distributing reproductions without Plaintiff's permission.

41.    Each Defendant, without the permission or consent of the Plaintiff, has and continues to sell online infringing copies and derivative works of the FRUITS BASKET Work. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101 *et seq.*).

42.    Further, as a direct and proximate result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted FRUITS BASKET Work. Plaintiff is entitled to full

disgorgement of all of Defendants' profits directly and indirectly attributable to their infringement of the FRUITS BASKET Work, including any profits from related merchandise and derivative works, pursuant to 17 U.S.C. § 504(b).

43.     The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

44.     As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

45.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of the copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff pursuant to 17 U.S.C § 503.

## IV.    Prayer For Relief

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the FRUITS BASKET Work or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized FRUITS BASKET Product or is not authorized by Plaintiff to be sold in connection with the FRUITS BASKET Work;

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the FRUITS BASKET Work;

c. committing any acts calculated to cause consumers to believe that Defendants' Infringing FRUITS BASKET Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the FRUITS BASKET Work and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which are derived from Plaintiff's FRUITS BASKET Work;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which are derived from Plaintiff's FRUITS BASKET Work;

2)      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a.   disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff, which are derived from the FRUITS BASKET Work, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff, which are derived from Plaintiff's copyrights in the FRUITS BASKET Work; and

c.   take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 17 U.S.C. § 504(c)(2) due to the exceptional nature of this case and Defendants' willful infringement;

5)      For Judgment in favor of Plaintiff against Defendants that they have:

a. willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Amended Complaint;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: April 22, 2026                    Respectfully submitted,

*/s/ Shengmao Mu*
Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West, 57th Street, 3rd and 4th Floors
New York, NY, 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

17